1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   8360 E. Raintree Drive, Suite 140
3  Scottsdale, AZ 85260

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Jeannette Edwards*

7

8                    **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF ARIZONA**

10                                              | Case No.

11  Jeannette Edwards,                          | **COMPLAINT**

12            Plaintiff,

13        v.

14  Life Insurance Company of North America;
    Apollo Group, Inc; Apollo Group, Inc. Disability
15  Plan,

16            Defendants.

17

18        Now comes the Plaintiff Jeannette Edwards (hereinafter referred to as "Plaintiff"), by

19  and through her attorney, Scott E. Davis, and complaining against the Defendants, she

20  states:

21                              *Jurisdiction*

22        1.      Jurisdiction of the court is based upon the Employee Retirement Income

23  Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

24  Those provisions give the district courts jurisdiction to hear civil actions brought to recover

25

26

                                      -1-

1    employee benefits.  In addition, this action may be brought before this Court pursuant to 28

2    U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

3    the United States.

4                                                    ***Parties***

5         2.     At all times relevant to this action, Plaintiff was a resident of Maricopa

6    County, Arizona.

7         3.     Upon information and belief, Defendant Apollo Group, Inc. (hereinafter

8    referred to as the "Company") sponsored, administered and purchased a group long-term

9    disability insurance policy which was fully insured by Life Insurance Company of North

10   America (hereinafter referred to as "LINA").   The specific LINA group long-term

11   disability policy is known as Group Policy No.: FLK-980124 (hereinafter referred to as

12   the "Policy").  The Company's purpose in sponsoring, administering and purchasing the

13   Policy was to provide long-term disability insurance for its employees.

14        4.     Upon information and belief, the Policy may have been included in and part

15   of an employee benefit plan, specifically named the Apollo Group, Inc. Disability Plan

16   (hereinafter referred to as the "Plan") which may have been created to provide the

17   Company's employees with welfare benefits.   At all times relevant hereto, the Plan

18   constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

19        5.     Upon information and belief, LINA functioned as the claim administrator of

20   the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the

21   Plan may not have made a proper delegation or properly vested fiduciary authority or power

22   for claim administration in LINA.

23

24

25

26

1    6.    LINA operated under a conflict of interest in evaluating Plaintiff's long-term

2  disability claim due to the fact that it operated in dual roles as the decision maker with

3  regard to whether Plaintiff was disabled, as well as the payor of benefits.

4    7.    LINA's conflict of interest existed in that if it found Plaintiff was disabled, it

5  was then financially liable for the payment of her disability benefits.

6    8.    The Company, LINA and the Plan conduct business within Maricopa County

7  and all events giving rise to this Complaint occurred within Arizona.

8    *Venue*

9    9.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28

10  U.S.C. §1391.

11    *Nature of the Complaint*

12    10.    Incident to her employment, Plaintiff was a covered employee pursuant to

13  the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).

14  Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from

15  the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.

16  §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to

17  from the Plan, any other Company Plan, and the Company as a result of being found

18  disabled in this action.

19    11.    Assuming the issue is ripe before the Court (i.e. the "Regular Occupation"

20  timeframe in the Plan and Policy has expired at the time of adjudication by the Court),

21  Plaintiff also seeks a determination that she is disabled and meets the "Any Gainful

22  Occupation" definition of disability set forth in the Plan and/or Policy as all the evidence

23  she submitted to LINA supports a determination by the Court that she meets the Plan and/or

24

25

26

1  Policy's "Any Gainful Occupation" definition of disability and that she is also entitled to
2  these benefits.

3       12.    After working for the Company as a loyal employee, Plaintiff became
4  disabled on or about May 21, 2014, due to serious medical conditions and was unable to
5  work in her designated occupation as an Academic Counselor.  Plaintiff has remained
6  continuously disabled as that term is defined in the relevant Policy for both "Regular
7  Occupation" and "Any Gainful Occupation" benefits since the day she became disabled and
8  has not returned to work in any occupation as a result of her serious medical conditions.

9       13.    Following the onset of her disability, Plaintiff filed a claim for short-term
10  disability benefits which was approved by LINA, and those benefits have been paid and
11  exhausted.  LINA reviewed the evidence in her short-term disability claim and concluded
12  Plaintiff was disabled and unable to engage in her regular occupation with the Company for
13  the duration of the claim and she exhausted those benefits.

14       14.    Upon information and belief, the short-term disability Plan contains a
15  "Regular and/or Own Occupation" definition of disability that is similar, if not identical, to
16  the "Regular Occupation" definition in LINA's Policy.  In other words, Plaintiff needed to
17  prove only that she was unable to work in her prior occupation with the Company in order
18  to be entitled to short-term disability benefits.  The fact that LINA approved Plaintiff's
19  short-term disability claim but denied her long-term disability claim when LINA's short and
20  long term policies contained essentially the same definitions of disability, is evidence that
21  LINA's financial conflict of interest was a motivating factor in why LINA denied Plaintiff's
22  long-term disability claim. LINA's conflict of interest, which motivated it to make
23  inconsistent claims decisions in Plaintiff's short and long-term disability claims, and this

inconsistency is relevant evidence for this Court to consider with regard to the unreasonableness of LINA's denial of Plaintiff's long-term disability claim.

15.     Following the exhaustion of her short-term disability claim/benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by LINA.  LINA made every decision in Plaintiff's long-term disability claim.

16.     Upon information and belief, the relevant LINA Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
- Unable to perform the material duties of his or her Regular Occupation; and
- Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
- Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
- Unable to earn 80% or more of his or her Indexed Earnings."

17.     In support of her claim for long-term disability benefits, Plaintiff submitted to LINA medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

18.     LINA approved Plaintiff's long-term disability claim and paid her disability benefits through November 7, 2014, when it terminated Plaintiff's disability claim and benefits without any medical documentation supporting its allegation that Plaintiff's medical conditions had improved in a way that would have allowed her to return to work.

19.     In a letter dated November 10, 2014, LINA informed Plaintiff it was terminating her long-term disability benefits beyond November 7, 2014.

1      20.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's November 10,

2  2014 termination of her disability benefits and submitted additional medical evidence to

3  support her appeal.

4      21.     In a letter dated April 21, 2015, LINA informed Plaintiff it was upholding its

5  prior decision to deny her claim for disability benefits.

6      22.     As part of its review of Plaintiff's claim for long-term disability benefits,

7  LINA obtained a medical records only "paper review" of Plaintiff's claim from a physician

8  of its choosing, James Butler, M.D.  LINA did not disclose the name of the reviewing

9  physician or his report to Plaintiff until after it rendered its April 21, 2015 denial of her

10  claim.

11      23.     Upon information and belief, Plaintiff alleges Dr. Butler may be long time

12  medical consultant for the disability insurance industry and/or LINA.  As a result, Plaintiff

13  alleges Dr. Butler may have an incentive to protect his own consulting relationship with the

14  disability insurance industry and/or LINA by providing medical records only paper reviews,

15  which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to

16  provide opinions and report(s) which are favorable to disability insurance companies and

17  which supported the denial of Plaintiff's claim.

18      24.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's April 21, 2015

19  denial of her claim.

20      25.     In support of her appeal and claim for long-term disability benefits, Plaintiff

21  submitted to LINA additional medical, vocational and lay witness evidence which

22  demonstrated that she met any definition of disability set forth in the Policy.

23      26.     Plaintiff submitted to LINA a July 27, 2015 narrative letter authored by her

24  treating board certified physician who opined, "…it is reasonable to assume [Plaintiff] has

25

26

1  been unable to work in her prior occupation as an Academic Counselor, and that she is

2  unable to work in any occupation at present and has been since May 21, 2014, and will be

3  indefinitely."

4        27.    Plaintiff also submitted to LINA a Functional Capacity Evaluation report

5  dated February 10, 2015, wherein after an extensive several hour evaluation, a qualified

6  physical therapist determined, "…[Plaintiff] does not currently meet the physical demands

7  of her job due to pain and limitation with sit, stand and walk."

8        28.    Further supporting her claim, Plaintiff submitted a vocational report from a

9  certified vocational expert dated October 4, 2015, who after reviewing Plaintiff's

10  aforementioned evidence, the definition of disability in the Policy as well as interviewing

11  her concluded, "From a vocational standpoint, it is clear that [Plaintiff] meets the definition

12  of disability as set forth by Cigna."

13        29.    Plaintiff also submitted updated medical records from each of her treating

14  providers and a list of her current medications, as well as the side effects they cause and the

15  impact they have on her ability to work in any occupation or any work environment.

16        30.    In addition to the medical records and reports submitted to LINA, Plaintiff

17  submitted two (2) sworn affidavits from herself and her daughter, who confirmed that

18  Plaintiff is unable to work in any occupation and that her medical conditions had not

19  improved in any meaningful way since her date of disability.

20        31.    LINA entered into a Regulatory Settlement Agreement ("RSA") with the

21  Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to

22  this Complaint).  Plaintiff reminded LINA of this agreement and its claim responsibilities

23  by submitting a copy of the agreement to LINA during the administrative review of her

24  claim.

25

26

1      32.     The RSA resulted from a multistate examination of LINA's disability

2  claims practices which led to regulatory concerns, a corrective action plan with

3  regulatory monitoring of LINA by governmental agencies in LINA's evaluation of its

4  disability claims, including similarly situated insureds such as Plaintiff.

5      33.     As part of the RSA, LINA agreed to pay $925,000 in fines to the participating

6  state regulatory agencies.

7      34.     As part of the RSA, LINA agreed to collectively pay 5 different states'

8  regulatory agencies hundreds of thousands of dollars for claims monitoring.

9      35.     The terms of the RSA apply to Plaintiff's claim and the RSA is relevant in

10  this action as it relates to whether LINA complied with the terms of the RSA.

11     36.     LINA's review of Plaintiff's claim failed to fully comply with the terms of

12  the RSA and Plaintiff is entitled to discovery with regard to how LINA is complying with

13  the terms of the RSA.

14     37.     As part of its review of Plaintiff's claim for long-term disability benefits,

15  LINA obtained a medical records only "paper review" of Plaintiff's claim from a physician

16  of its choosing, Philip Marion, M.D.  LINA did not disclose the name of the reviewing

17  physician, Dr. Marion, or his report to Plaintiff until after it rendered its final denial in her

18  claim.

19     38.     Upon information and belief, Plaintiff alleges Dr. Marion may be long time

20  medical consultant for the disability insurance industry and/or LINA.  As a result, Plaintiff

21  alleges Dr. Marion may have an incentive to protect his own consulting relationship with

22  the disability insurance industry and/or LINA by providing medical records only paper

23  reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim,

24

25

26

in order to provide opinions and report(s) which are favorable to disability insurance companies such as LINA and which supported the denial of Plaintiff's claim.

39.     In three (3) separate letters dated October 14, 2015, October 19, 2015 and January 21, 2016, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity for her and her treating medical professionals to respond to their reviews prior to LINA rendering a determination in her claim.

40.     Prior to rendering its final denial in Plaintiff's claim, LINA never shared with Plaintiff the medical records only "paper review" authored by Dr. Marion so she could respond to the report and perfect her claim.  LINA's failure to provide Plaintiff with the opportunity to respond to Dr. Marion's report is an ERISA procedural violation, precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

41.     In a letter dated February 11, 2016, LINA notified Plaintiff it had denied her claim for long-term disability benefits under the Policy.  In the letter, LINA also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

42.     Upon information and belief, LINA's February 11, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability of disability in the Policy.

1        43.     In evaluating Plaintiff's claim on appeal, LINA owed her a fiduciary duty and

2  had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other

3  participants" which it failed to do. [1]

4        44.     LINA failed to adequately investigate and failed to engage Plaintiff in a

5  dialogue during the appeal of her claim with regard to what evidence was necessary so

6  Plaintiff could perfect her appeal and claim.  LINA's failure to investigate the claim and to

7  engage in this dialogue and to ask for or to obtain the evidence it believed was necessary

8  and critical to perfect Plaintiff's claim is a violation of ERISA, of Ninth Circuit case law and

9  a reason she did not receive a full and fair review.

10        45.     Plaintiff alleges LINA provided an unlawful review which was neither full

11  nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1 and the terms of the

12  RSA, by failing to adequately investigate her claim because the third party vendors it

13  retained and those vendors' reviewing medical professionals, such as Dr. Marion, were not

14  truly independent or impartial; by failing to credit Plaintiff's reliable evidence; by failing to

15  obtain an Independent Medical Examination when the policy allowed for one, which raises

16  legitimate questions about the thoroughness and accuracy of its review and denials; by

17  providing one sided reviews of Plaintiff's claim that failed to consider all the evidence

18  submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's

19

20

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

21

22

23

24

25

26

1   claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by

2   failing to consider all the diagnoses and/or limitations set forth in her medical evidence as

3   well as the impact the combination of those diagnoses and impairments would have on her

4   ability to work; by failing to engage Plaintiff in a dialogue so she could respond to Dr.

5   Marion's report and submit the necessary evidence to perfect her claim and by failing to

6   consider the impact the side effects from Plaintiff's medications would have on her ability to

7   engage in any occupation.

8          46.    Plaintiff alleges a reason LINA provided an unlawful review which was

9   neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to

10  its conflict of interest that manifested as a result of the dual roles LINA undertook as the

11  decision maker and payor of benefits.  LINA's conflict of interest provided it with a

12  financial incentive to deny Plaintiff's claim and when it did, it saved itself a significant

13  amount of money.

14         47.    Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of

15  interest, the conflict of interests of its third party vendor who retained any reviewing

16  medical professionals and of *any* individual who reviewed her claim.  The Court may

17  properly weigh and consider extrinsic evidence regarding the nature, extent and effect of

18  *any* conflict of interest and/or ERISA procedural violation and/or RSA violation which

19  may have impacted or influenced LINA's decision to deny her claim.

20         48.    With regard to whether Plaintiff meets both definitions of disability set forth

21  in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because

22  even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA

23  committed by LINA as referenced herein are so flagrant they justify *de novo* review.

24

25

26

-11-

1    49.     As a direct result of LINA's decision to deny Plaintiff's disability claim, she

2  has been injured and suffered damages in the form of lost long-term disability benefits, in

3  addition to other potential non-disability employee benefits she may be entitled to receive

4  through or from the Plan, from any other Company Plan and/or the Company as a result of

5  being found disabled.   Plaintiff believes that other potential non-disability employee

6  benefits may include but not be limited to, health and other insurance related coverage or

7  benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the

8  premium on a life insurance policy providing coverage for her and her family/dependents.

9    50.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid

10  disability and non-disability employee benefits, prejudgment interest, reasonable

11  attorney's fees and costs from Defendants.

12    51.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.

13  §20-462, or at such other rate as is appropriate to compensate her for the losses she has

14  incurred as a result of Defendants' nonpayment of benefits.

15    WHEREFORE, Plaintiff prays for judgment as follows:

16    A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to

17  prove that she meets the "Regular Occupation" definition of disability set forth in the

18  relevant Plan and/or Policy and that she is entitled to these benefits along with any other

19  non-disability employee benefits she may be entitled to as a result of that Order, from the

20  date she was first denied these benefits through the date of judgment with prejudgment

21  interest thereon;

22    B.     For an Order directing Defendants to continue paying Plaintiff the

23  aforementioned benefits until such a time as she meets the conditions for the termination of

24  benefits;

25

26

1         C.     Assuming the issue is ripe before the Court (i.e. the "Regular Occupation"

2    timeframe in the Plan and/or Policy has expired at the time the Court adjudicates the case

3    and the relevant definition of disability in the Plan and/or Policy is that Plaintiff must be

4    disabled from engaging in "Any Gainful Occupation"), for an Order that the evidence in

5    Plaintiff's claim is sufficient to prove that she also meets the "Any Gainful Occupation"

6    definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to

7    these benefits along with pre-judgment interest thereon;

8         D.     Assuming the Court issues an Order that Plaintiff meets the "Any Gainful

9    Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order that

10   Defendants must continue to pay these benefits and any other non-disability employee

11   benefits she may be entitled to as a result of that Order until such a time as she meets the

12   conditions for the termination of these benefits;

13        E.     Alternatively, if the issue of whether Plaintiff meets the "Any Gainful

14   Occupation" definition of disability in the Plan and/or Policy is not ripe before the Court at

15   the time of adjudication because the "Regular Occupation" timeframe has not expired, or

16   the timeframe has expired, but the Court determines that it is unable to make an "Any

17   Gainful Occupation" determination for any reason, then Plaintiff seeks an Order remanding

18   her claim to the Plan Administrator for an administrative review where she can submit new

19   and additional evidence so the Plan Administrator may determine whether she meets the

20   "Any Gainful Occupation" definition of disability;

21        F.     For attorney's fees and costs incurred as a result of prosecuting this suit

22   pursuant to 29 U.S.C. §1132(g); and

23        G.     For such other and further relief as the Court deems just and proper.

24

25

26

1

DATED this 31st day of March, 2016.

2

SCOTT E. DAVIS. P.C.

3

By:    */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26